# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| Sharon K. Martin, individually and on behalf of all others similarly situated in Missouri,<br><br>   Plaintiff,<br><br>   v.<br><br>Wm. Wrigley Jr. Co.,<br><br>   Defendant. | Case No. 4:17-cv-00541-NKL |

## ORDER

Defendant Wm. Wrigley Jr. Co. ("Wrigley") moves to dismiss the petition by plaintiff Sharon K. Martin. For the reasons set forth below, the motion to dismiss is granted with prejudice for failure to state a plausible claim.

### I. FACTS ALLEGED

Plaintiff filed this putative class action in the Circuit Court of Jackson County, alleging that Wrigley employed "deceptive, unfair, and false merchandising practices" in connection with the packaging of the ECLIPSE® Gum 18-piece 2-Pack. Ms. Martin purchased the gum package for $1.09 on March 4, 2017 for personal or familial use and "for evaluative purposes of this lawsuit." Ms. Martin claims that the gum packaging is opaque and conceals the fact that the gum sheet includes nonfunctional empty tabs that, from without, give the appearance of being additional gum pieces. Ms. Martin claims that the empty tabs constitute slack-fill in violation of state law. She brought this action on behalf of both herself and a proposed class of all persons in Missouri who purchased an ECLIPSE® Gum Twin-Pack in the five years preceding the filing of the petition. Her first claim is for violation of Section 407.020 of the Missouri Merchandising

Practices Act (the "MMPA"), which prohibits the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." She also alleges negligent misrepresentation and unjust enrichment. She seeks compensatory damages, disgorgement, or restitution, along with pre- and post-judgment interest, and reasonable attorneys' fees.

Wrigley removed the action to this Court on the basis of the Class Action Fairness Act of 2005. Ms. Martin has not challenged the removal. Wrigley now moves to dismiss the case for failure to state a claim.

## II. STANDARD

The Federal Rules of Civil Procedure require the dismissal of a complaint that fails to "state a claim to relief that is plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In determining whether a complaint alleges sufficient facts to state a plausible claim to relief, the Court accepts all *factual* allegations as true. *See Great Plains Trust Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 995 (8th Cir. 2007). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "Where we can infer from th[e] factual allegations no more than a 'mere possibility of misconduct,' the complaint must be dismissed. *Cole v. Homier Distrib. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. 662 at 679).

## III. DISCUSSION

Wrigley argues that the action should be dismissed for three reasons: first, Plaintiff's claims fail to conform with federal law concerning slack-fill, which preempts state law on the subject, and therefore have no legal merit; second, Plaintiff fails to allege a causal connection between her loss and the allegedly deceptive packaging; and finally, plaintiff's unjust enrichment claim fails because it is derivative of her other claims, which fail, and because plaintiff fails to allege that she has no adequate remedy at law.

### a. Applicable Law and Regulations Concerning Slack-Fill

Plaintiff's first claim is for violation of Section 407.020 of the MMPA, which prohibits the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." But the Court's interpretation of the MMPA is conscribed by federal law.

The Nutrition Labeling and Education Act of 1990 (the "NLEA") expressly preempts state law concerning misleading containers. *See* 21 U.S.C. § 343-1(a)(3) ("[N]o State . . . may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce . . . any requirement for the labeling of food of the type required by section . . . 343(d) . . . of this title that is not identical to the requirement of such section . . . .");[1] *Id.,* § 343(d) (providing that "food shall be deemed to be misbranded . . . [i]f its container is . . . filled as to be misleading"). Accordingly, the Court must construe the MMPA provisions governing Plaintiff's claims, which purport to concern misleading containers and slack-fill, as

---

[1] Section 343-1(a)(3) applies not just to labeling in the lay sense, but also to misleading containers, as evidenced by the express reference to Section 343(d), which concerns "misleading container[s]" alone.

being no broader than corresponding federal law.[2] *See Izquierdo v. Mondelez Int'l, Inc.*, No. 16-04697, 2016 WL 6459832, at *4 (S.D.N.Y. Oct. 26, 2016) ("Consistent with the NLEA's purpose of promoting uniform national labeling standards, the statute includes an express preemption provision that forbids the states from "directly or indirectly establish[ing] . . . any requirement . . . made in the labeling of food that is not identical to" the federal labeling requirements established by certain specifically enumerated sections . . . . 'Where federal requirements address the subject matter that is being challenged through state law claims, such state law claims are preempted to the extent they do not impose identical requirements.'") (quoting, *inter alia*, 21 U.S.C § 343-1(a)).

The applicable portion of the NLEA provides that "[a] food shall be deemed to be misbranded . . . if its container is so made, formed, or filled as to be misleading." 21 U.S.C. § 343(d). The statute provides no additional guidance concerning when a container's fill may be misleading.

As the agency tasked with administration of the NLEA, the Food and Drug Administration ("FDA") has substantial power to interpret the statute insofar as it is silent or ambiguous. *See Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 843 (1984). Therefore, to determine whether a filling may be "misleading" in conformity with federal law, the Court may turn to FDA interpretations for guidance. Indeed, so long as it is not "arbitrary, capricious, or manifestly contrary to the statute," the Court must defer to the FDA's interpretation. *Id.* at 844.

FDA regulations promulgated pursuant to Section 343 of the NLEA specify that a "misleading" container is one that, *inter alia*, "does not allow the consumer to fully view its

---

[2] Plaintiff does not dispute that federal law preempts MMPA provisions concerning misleading containers. *See, generally*, Doc. 14.

contents." 21 C.F.R. § 100.100. The FDA published the following explanation of this regulation:

> With respect to transparent containers, FDA notes that section 403(d) of the act is intended to prohibit partially filled packages that give a *false impression* as to the quantity of food they contain. FDA is not aware of there ever having been any action against a product that was allegedly filled so as to be misleading that was packaged in a container that allowed consumers to fully view its contents. Nor can FDA conceive of any situation related to fill of container where consumers would be misled as to the quantity of contents in such a container. Therefore, FDA is modifying §100.100(a) to specify that a container that does not allow consumers to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill. This action acknowledges that *misleading fill has not been an issue when consumers can clearly see the level of fill in a container*.

Misleading Containers; Nonfunctional Slack-Fill, 58 Fed. Reg. 64123-01, at 64128 (Dec. 6, 1993) (emphases added).[3] The FDA further stated that "the entire container does not need to be transparent to allow consumers to fully view its contents . . . ." *Id.* At the same, time, however, "devices, such as a window at the bottom of a package, that require consumers to manipulate the package, *e.g.*, turning it upside down and shaking it to redistribute the contents, do not allow consumers to fully view the contents of a container." *Id.* The FDA therefore has advised that "displaying a portion of the contents in such a way as to give consumers an *erroneous* impression of the quantity of contents in a package, whether through misleading packaging or through misleading filling practices, constitutes misbranding." *Id.* (emphasis added). It follows, both from the FDA's regulations and explanations and from common sense, that a container that

---

[3] The Court must defer to rational FDA interpretations set forth in the Federal Register. *See Young v. Cmty. Nutrition Inst.*, 476 U.S. 974, 978 and 981 (1986) (finding FDA's interpretation of a statute, as "stated in a notice published in the Federal Register," "to be sufficiently rational to preclude a court from substituting its judgment for that of the FDA"); *Sec. Exch. Comm'n v. Phan*, 500 F.3d 895, 903-04 & n.10 (9th Cir. 2007) (affording "substantial deference" to Securities and Exchange Commission instruction published in Federal Register, but not codified in Code of Federal Regulations, as "an agency's published interpretation of its own regulations").

readily permits a consumer to see the level of fill would not be misleading, and therefore would not violate the MMPA or constitute a misrepresentation.

    **b. The ECLIPSE® 18-Piece 2-Pack**

To determine whether Plaintiff has plausibly alleged that the Eclipse® 18-piece 2-pack contains unlawful slack-fill in violation of the MMPA, as limited by the NLEA, the Court considers various images of the gum package presented by both Plaintiff and Wrigley.[4]

The following images depict from various angles the gum pack of which plaintiff complains.




**Image 1**                                                                                                   **Image 2**

---

[4] As the gum packaging is "embraced" in the petition—including in selective images presented by the plaintiff (*see, e.g.,* Doc. 1-01, ¶ 16)—the Court may consider images of it in deciding the instant motion. *See Hughes v. City of Cedar Rapids, Iowa*, 840 F.3d 987, 998 (8th Cir. 2016) ("District courts may consider those materials that are necessarily embraced by the pleadings. Those materials include documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings.") (quotation marks and citation omitted); *Elkharwily v. Mayo Holding Co.*, 823 F.3d 462, 469 (8th Cir. 2016) ("Because [plaintiff] referenced his January 2011 report in his second amended complaint, the district court properly considered his testimony and appropriately decided this issue [partially on that basis] in the motion to dismiss."), *cert. denied*, 137 S. Ct. 481, *reh'g denied*, 137 S. Ct. 716 (2017). In any event, Plaintiff has waived any right she may have had to object to the Court's consideration of these pictures, as, far from objecting to their inclusion, Plaintiff frequently referenced the defendant's pictures to support arguments made in her opposition papers. *See, e.g.,* Doc. 14, at 1 and 3.




**Image 3**             **Image 4**



**Image 5**

In the following image, the gum sheet has been pulled out to reveal the full "empty tab" of which Plaintiff complains.



**Image 6**

7

Each of the first five images establishes that the "empty tabs" are visible from the outside of the package. No special manipulation is required to discern the empty tabs. *See* Misleading Containers; Nonfunctional Slack-Fill, 58 FR 64123-01, at 64128 ("[M]isleading fill has not been an issue when consumers can clearly see the level of fill in a container."); *cf. id.* ("[D]evices . . . that require consumers to manipulate the package, *e.g.*, turning it upside down and shaking it to redistribute the contents, do not allow consumers to fully view the contents of a container . . . ."). The empty tabs are immediately apparent, particularly when viewed through the open side. *See* Images 3, 4, and 5 above.

Significantly, the package's thumb-size cut-out, which permits a partial view of the gum pack, is adjacent to, and partly above, the empty tab, partially exposing it when viewed straight on, and fully exposing it when viewed at a diagonal at the open side. *See* Images 3 and 4 above. Had Wrigley wished to conceal the empty tab, it could have placed the thumb-size cut-out above or beside a piece of gum—that might have given a consumer the misimpression that the blister pack is full of gum from end to end. However, because the complained-of empty tab is readily apparent, Plaintiff's claim that the packaging misleads the reasonable consumer is improbable, if not impossible.

Moreover, the package displays, in relatively large lettering and in more than one place, that it contains 18 pieces of gum. *See* Images 1, 3, and 4 above. Plaintiff argues that the plain and obvious statements of quantity do not suffice to defeat a claim under the MMPA. However, unlike cases in which a defendant argued that a combination of statements of net weight, serving size, and servings per container provided sufficient information for a consumer to ascertain how much product actually was in a given container, here, no calculation is necessary to determine that there are 18 tablets of gum in the package. *Cf. White v. Just Born Inc.*, No. 17-cv-04025,

8

2017 WL 3130333, at **4-5 (W.D. Mo. July 21, 2017) (rejecting defendant's contention that "express disclosures" of "net weight, serving size, and number of servings per box" were fatal to plaintiff's claim, noting that "a reasonable consumer" may not have realized that the boxes contained "35% and 34% slack-filled space"). Plaintiff argues that even if it would have been unreasonable for a consumer to expect more than 18 pieces of gum in the package, it might have been reasonable to expect the package to contain 18 larger pieces. However, the open-sided packaging and the thumb-size cut-out adjacent to the "empty tab" belies Plaintiff's argument. *Cf.* Misleading Containers; Nonfunctional Slack-Fill, 58 FR 64123-01 at 64126 ("FDA also finds that deceptive methods of packaging whereby that portion of the contents displayed gives the consumer *an erroneous impression as to the quantity of product* in a container . . . is misbranding.") (emphasis added). Any consumer can readily see that there is no gum at all below the thumb-size cut-out, as Plaintiff herself admits (*see* Doc. 14, at 5 ("When a consumer observes the package on a shelf at the store, as perhaps in the image on top of page 4 of Defendant's Suggestions in Support, no gum at all is visible.")), so the reasonable consumer can be under no delusion that gum fills the blister pack from end to end.

Plaintiff attempts to circumvent this sticky point by arguing that "a consumer might simply expect offset rows of gum to accommodate the cutout, as indicated" in the following image:


**Image 7**

9

Doc. 14, at 5-6.  Tellingly, however, even in this image that Plaintiff created with the intent of bolstering her position, there is what might be termed nonfunctional space in the top row, on the left side, diagonally opposite to the revealing thumb-size cut-out and the open side of the package.  In other words, the "offset rows of gum" that Plaintiff argues a reasonable consumer might expect would not be any more full than the blister pack at issue—it would merely have empty space in a different place.

Plaintiff also appears to forget the fact that the 18-piece package consists of *two* gum sheets, as the labeling clearly states, and as evident in the following images:



**Image 8**     **Image 9**

**Image 10**     **Image 11**

**Image 12**

18 pieces in two blister packs means 9 pieces of gum in each blister pack. Given the odd number of pieces in each blister pack, the reasonable consumer could not expect evenly spaced rows of gum without any empty space in each rectangular sheet. With an odd number of pieces in each sheet, Wrigley could not position its gum tablets in the rectangular pack without leaving a little gumless space somewhere. Wrigley chose to make use of that necessarily empty space by incorporating grips into the blister packs for ease of use.[5]

Wrigley provides 18 pieces of gum—substantially more than the competing packages Plaintiff references provide—in twin blister packs, and it made these facts patently obvious on the face (and back, and sides) of every package, through both plain and conspicuous language and through the thumb-size cut-out and open side. *See* Images 1-5 and 8-12 above. No reasonable consumer could have been misled by the packaging.

The instant packaging is different from the non-transparent packaging that has been the subject of other complaints that survived motions to dismiss. In *White* and *Bratton v. The Hershey Co.*, for example, the packaging at issue was "opaque" and "non-pliable." *White*, 2017 WL 3130333, at *4; *Bratton v. Hershey Co.*, No. 16-CV-4322, 2017 WL 2126864, at *4 (W.D. Mo. May 16, 2017). In fact, the Court searched in vain for a slack-fill case in the United States alleging that packaging that is either transparent or has a window is misleading.

Having reviewed the images of the packaging that the parties have presented (and which were embraced by the petition), the Court must conclude that plaintiff cannot state a plausible claim that the packaging of the ECLIPSE® 18-piece 2-pack is misleading.

---

[5] The other gum packages that Plaintiff references in her opposition papers, *see* Doc. 14, at 4, contain even, not odd, numbers of gum pieces (12 and 10, respectively), so their designs are not instructive here.

The Court rejects Plaintiff's argument that the question of whether a consumer could reasonably believe that the 18-piece 2-pack is misleading should not be decided upon a motion to dismiss. Under the pleading standards mandated by the Supreme Court's decisions in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Iqbal*, the Court is obligated to dismiss claims that do no more than suggest "a sheer possibility" of liability. *See Iqbal*, 556 U.S. at 678; *see also In re Gen. Mills Glyphosate Litig.*, No. CV 16-2869 (MJD/BRT), 2017 WL 2983877, at *6 (D. Minn. July 12, 2017) ("While the question of whether a consumer's belief is reasonable is often a fact question to be determined at a later stage, Supreme Court precedent, such as *Iqbal*, requires federal courts to assess, at the motion to dismiss stage, whether a complaint alleges sufficient facts to state a claim for relief that is plausible on its face."). Thus, although the question of whether packaging is misleading to the reasonable consumer is a question of fact that ordinarily is not appropriate for determination upon a motion to dismiss, "dismissal of such claims is appropriate where the plaintiff fails to show the likelihood that a reasonable consumer would be deceived." *Gen. Mills. Glyphosate Litig.*, 2017 WL 2983877, at *6.

Thus, several sister courts have dismissed claims alleging violation of state consumer protection laws where the claims were either improbable or raised no more than a mere possibility of violation. In *Fermin v. Pfizer*, the court, citing the "clearly stated pill-counts on the labels" found that it was "not probable or even possible that Pfizer's packaging could have misled a reasonable consumer" so as to violate any of three states' consumer protection laws. 215 F. Supp. 3d 209, 212 (E.D.N.Y. 2016). In *Bush v. Mondelez, Int'l, Inc.*, the court dismissed a slack-fill case where the "labels accurately disclose[d] the number of cookies included in each container." No. 16-02460, 2016 WL 7324990, at *1 (N.D. Cal. Dec. 16, 2016). In *Carrea v. Dreyer's Grand Ice Cream, Inc.*, the court granted a motion to dismiss when, "[h]aving reviewed

the product packaging itself, the court conclude[d] as a matter of law that a reasonable consumer would not likely be deceived by the Drumsticks packaging . . . ." No. 10-01044, 2011 WL 159380, at *5 (N.D. Cal. Jan. 10, 2011), *aff'd*, 475 Fed. Appx. 113 (9th Cir. 2012) ("It is implausible that a reasonable consumer would interpret 'Original Sundae Cone,' 'Original Vanilla,' and 'Classic,' to imply that Drumstick is more wholesome or nutritious than competing products."). In *Ibarrola v. Kind, LLC*, the plaintiff complained that a package for a snack containing "evaporated cane juice and molasses" was deceptive because it purported to contain "no refined sugars," although the cane juice and molasses were not "naturally occurring" sugars. 83 F. Supp. 3d 751, 754-55 (N.D. Ill. 2015). The Court noted that "sugar cane in its natural state is a grass that contains jointed stalks resembling bamboo" that are "made up of fibrous flesh surrounded by bark," and "[g]iven this reality, no reasonable consumer would think . . . that the sugar contained in [the] products was still in its natural, completely unrefined state." In *Mantikas v. Kellogg Co.*, a federal court granted a motion to dismiss claims under two states' consumer protection laws because "no reasonable consumer would believe that the [Cheez-It Whole Grain] Crackers were *solely* composed of whole grain, as the front of the Product's box explicitly stated otherwise." No. 16-2552, 2017 WL 2371183, at *5 (E.D.N.Y. May 31, 2017). In *Kommer v. Bayer Consumer Health*, the plaintiff alleged that a kiosk "misleads consumers into thinking they are having custom orthotics designed specifically for their physiology," when in fact, "the Kiosk simply directs consumers to pick one of fourteen numbered, pre-manufactured Dr. Scholl's over-the-counter arch inserts." No. 16-1560, 2017 WL 2231162, at *5 (S.D.N.Y. 2017). The court dismissed the claims for breach of state consumer protection law, noting that "[a]t the point that the consumer is directed to select a pre-packaged Insert stacked along shelves on the side of the Kiosk, . . . it is no longer reasonable for him to think that he is getting a

product 'individually designed for his feet.'" *Id.* In short, federal courts, applying the heightened pleading standard mandated by *Twombly* and *Iqbal*, routinely dismiss consumer protection claims where, as here, a reasonable consumer could not plausibly be misled by the packaging at issue.

Because, as a matter of law, it is not plausible that a reasonable consumer would be misled by the gum package, the package is not misleading and cannot form the basis of a claim for violation of the MMPA or a negligent misrepresentation claim. Plaintiff's first and second claims must be dismissed for failure to state a plausible claim.[6]

### c. Whether Plaintiff States a Claim for Unjust Enrichment

To state a claim for unjust enrichment, Plaintiff must plausibly allege that (i) Wrigley received a benefit, (ii) at the Plaintiff's expense, and (iii) allowing Wrigley to retain the benefit would be unjust. *See Gerke v. City of Kansas City*, 493 S.W.3d 433, 438 (Mo. App. 2016).

Plaintiff alleges that Plaintiff "conferred a benefit on Defendant" because she purchased the gum package at issue, and Wrigley's "retention of the benefit is inequitable and unjust because the benefit was obtained by Defendant's fraudulent and misleading representations about the Gum." Doc. 1-1, at 49-51. The only misleading representations the petition alleges concern the packaging of the gum. *See* Doc. 1-1, ¶¶ 16-19. However, as discussed above, the Court has already concluded that the Eclipse® 18-piece 2-pack packaging is not misleading, because a reasonable consumer could not expect more gum—in terms of either number or size— than the package provides. Therefore, Plaintiff fails to plausibly allege that Wrigley's retention

---

[6] The Court need not reach Wrigley's argument that the functionality of the grips warrants dismissal of these claims.

of the purported benefit was unjust—a critical element of her unjust enrichment claim. Plaintiff's claim for unjust enrichment therefore is dismissed for failure to state a plausible claim.

## IV. CONCLUSION

For the reasons set forth above, Wrigley's motion to dismiss the petition is granted, with prejudice.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: October 23, 2017
Jefferson City, Missouri

15